FILED
CLERK
4:08 pm, Oct 16, 2023
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

LISA BONNER and ROBERT METEL,

        Plaintiffs,

-against-

TOWN OF BROOKHAVEN and THERESA TREJO,

        Defendants.

------------------------------------------------------------------X

**MEMORANDUM & ORDER**
CV 22-4690 (GRB)(ARL)

**GARY R. BROWN, United States District Judge:**

Presently before the Court is defendants' motion to dismiss this case under Fed. R. Civ. P. 12(b)(6). For the reasons stated below, that motion is **DENIED**.

**BACKGROUND**

Plaintiffs Robert Metel and Lisa Bonner ("plaintiffs") bring this action based on alleged constitutional violations committed by defendants Town of Brookhaven ("the Town") and its employee Theresa Trejo ("defendants") regarding the Town's condemnation of plaintiffs' residence in 2019. *See generally* Compl., Docket Entry ("DE") 1. Metel resided at 356 Cypress Drive in Mastic Beach, NY for over twenty years, and he lived there together with Bonner for at least several years. *Id.* at ¶¶ 2, 14. During an unsolicited visit and without plaintiffs present, Trejo allegedly entered plaintiffs' home, declared it "unfit for human habitation," and condemned the house. *Id.* at ¶¶ 14-18. Plaintiffs continued to live there until Town employees boarded it up four days later, rendering both the house and plaintiffs' personal property inaccessible. *Id.* at ¶¶ 21-24.

1

Plaintiffs claim there was no legitimate basis for the condemnation, which was actually effected to force plaintiffs from their home. *Id.* at ¶¶ 27-28. They further allege that the Town has a policy of performing similar condemnations amounting to illegal evictions and that the Town failed to properly train, supervise, or control its employees, including Trejo. *Id.* at ¶¶ 30-42. Plaintiffs commenced the instant suit on August 9, 2022, bringing claims against defendants under 42 U.S.C. § 1983 for allegedly violating their Fourth Amendment rights by (1) illegally entering and searching the house, leading to the condemnation and (2) illegally seizing plaintiffs' property, including both their house and all the personal property contained within. *Id.* at ¶¶ 63-72. Plaintiffs also bring a *Monell* claim against the Town based on its alleged failure to train or supervise town employees. *Id.* at ¶¶ 83-86.

On March 1, 2023, the Court held a telephonic pre-motion conference and the parties argued defendants' anticipated motion to dismiss. DE 11. The Court made rulings that were placed on the record, and the parties were directed to brief the remaining issues. *Id.* At this conference, defendants alerted the Court that they had conducted a title search revealing that plaintiffs' home was foreclosed on in 2017, *id.*, two years prior to the condemnation, and that the house has ever since been owned by U.S. Bank, DE 14-4. However, there is no indication that U.S. Bank initiated eviction proceedings against plaintiffs prior to the condemnation. On April 27, 2023, defendants filed the instant motion, DE 14, and plaintiffs subsequently filed their memorandum in opposition, DE 15.

**DISCUSSION**

*Standard of Review*

Motions to dismiss are decided under the well-established standard of review for such matters, as discussed in *Burris v. Nassau County District Attorney*, No. 14-5540 (JFB) (GRB),

2017 WL 9485714, at *3-4 (E.D.N.Y. Jan. 12, 2017), *adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017), and incorporated by reference herein. The gravamen of that standard, of course, is the question of whether, assuming the allegations of the complaint to be true solely for the purposes of the motion, the complaint sets forth factual material to render the claims plausible. *See id.*

*Judicial Notice*

In deciding a motion to dismiss for failure to state a claim, the Court must consider only the allegations in the complaint, those documents attached to the complaint or incorporated by reference, and facts subject to judicial notice. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). The Court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Judicial notice is regularly taken of publicly available documents and government records, *Kramer*, 937 F.2d at 774, including foreclosure records, *Pennicott v. JPMorgan Chase Bank, N.A.*, No. 21 Civ. 4575 (LGS), 2022 WL 4226025, at *1 (S.D.N.Y. Sept. 13, 2022).

Attached to defendants' motion to dismiss is a Suffolk County foreclosure deed indicating that ownership of the property that is the subject of this case passed to U.S. Bank in 2017. DE 14-4. Because this document comes from a reliable and publicly accessible government source, the Court takes judicial notice of its contents. Though provided with the opportunity, plaintiffs have not attacked the authenticity of the document or controverted its contents. As such, the fact that plaintiffs were not the legal owners of the residence at the time it was condemned will be considered in deciding defendants' motion to dismiss.

*Fourth Amendment Claims as to Plaintiffs' Residence*

The viability of both plaintiffs' first cause of action and second cause of action as it pertains to the house depends on what, if any, property rights plaintiffs held in the house at the time of condemnation. These two claims are considered together.

Whether a plaintiff has standing to assert a Fourth Amendment claim turns on if he or she has a "legitimate expectation of privacy" in the place searched or seized. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Protection extends to those with a lawful possessory interest, but not those whose presence on the property is "wrongful." *Id.* at 143, n.12. The Supreme Court provided examples of "wrongful presence," such as a "burglar plying his trade in a summer cabin during the off season," *id.*, or a thief in possession of a stolen car, *id.* at 141, n.9. The Second Circuit has applied this rule in criminal cases involving traffic stops where the defendant was neither the owner of the automobile nor had the authorization of the owner. *See United States v. Sanchez*, 635 F.2d 47, 64 (2d Cir. 1980) (finding that a defendant who "demonstrated neither ownership of [the car], nor license from the owner to possess [it]" had no Fourth Amendment rights in the vehicle); *United States v. Roy*, 734 F.2d 108, 111–12 (2d Cir. 1984) (holding that an escaped prisoner did not have a legitimate expectation of privacy in a vehicle he intended to use in the commission of further crimes). Of course, expectations of privacy in a vehicle are generally judged by different standards than those applicable to a residence. United States v. Paulino, 850 F.2d 93, 96 (2d Cir. 1988). Several district courts in this circuit have extended the "wrongful presence" standard to cases involving illegally occupied dwellings, but only if the party attempting to assert Fourth Amendment rights, like the burglar posited in *Rakas*, was never entitled to reside at the property. *See Wilson v. Sessoms-Newton*, No. 14-CV-00106 (PKC), 2017

4

WL 3575240, at *4 (E.D.N.Y. Aug. 17, 2017) (determining that squatters that never had a lease agreement with property owner had no legitimate expectation of privacy); *Smith v. Cnty. of Nassau*, No. 10-CV-4874 (MKB), 2015 WL 1507767, at *8 (E.D.N.Y. Mar. 31, 2015) (finding that a plaintiff had no Fourth Amendment rights in an apartment based on fraudulent lease unknown to the property owner).

By contrast, courts have generally found that a person whose initial presence is lawful maintains Fourth Amendment rights in his or her residence until an eviction proceeding occurs, even if such a proceeding is legally justified. *See United States v. Washington*, 573 F.3d 279, 284 (6th Cir. 2009) (declaring that even though landlord had the right to evict a tenant for nonpayment of rent and violation of the terms of the lease, "mere authority to evict a person cannot of itself deprive that person of an objectively reasonable expectation of privacy"); *United States v. Young*, 573 F.3d 711, 720 (9th Cir. 2009); *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 859 (7th Cir. 1999) (finding that police officers violated a resident's Fourth Amendment rights by searching a home without a warrant while delivering summons to eviction proceedings). Although the Second Circuit has not spoken on the issue, other circuits have held that until a resident has "notice that his continued occupancy had been adjudged to be unlawful," he maintains a legitimate expectation of privacy in the dwelling. *See United States v. Curlin*, 638 F.3d 562, 566 (7th Cir. 2011).

Here, plaintiffs may assert Fourth Amendment rights in their home because their initial presence was lawful and there had been no effort to evict them. It is undisputed that, prior to U.S. Bank's foreclosure, plaintiff Metel was the lawful owner and occupant of the house and was entitled to Fourth Amendment protections at that time. DE 14-6 at 2; DE 15-1 at 2. Despite nearly two years elapsing between the foreclosure and the condemnation, there is no indication

5

that the bank ever commenced eviction proceedings or otherwise attempted to remove plaintiffs from the premises. This places the case squarely in the ambit of *Washington*, where the Sixth Circuit held that an apartment resident had Fourth Amendment protections even though his landlord could legally evict him. 573 F.3d at 284–85. Here, U.S. Bank could have ousted plaintiffs from their home through a legal proceeding, but since it failed to do so, plaintiffs maintain their pre-existing expectation of privacy in the house. Plaintiffs' argument is more compelling than the interests recognized in *Ryan*, where the Seventh Circuit found that police officers could not search an apartment after delivering summons for an eviction proceeding to the owner. 188 F.3d at 859. In *Ryan*, the police were at least aware of an ongoing eviction effort and arguably trying to vindicate the rights of the property owner attempting to regain possession. *Id.* at 859–60. By contrast, plaintiffs in this case assert that defendants were unaware of the foreclosure at the time they condemned plaintiffs' home, no eviction proceedings had been initiated, and there is no suggestion that defendants were acting at U.S. Bank's behest in appearing at plaintiffs' home. DE 15-1 at 2. Therefore, the Court adopts the reasoning embraced by the Sixth, Seventh, and Ninth Circuits and holds the plaintiffs had a legitimate expectation of privacy in their home at the time of alleged search and seizure.

 A contrary outcome in this case would be a dramatic extension of the Second Circuit's vehicular decisions in *Sanchez* and *Roy*. *See Sanchez*, 635 F.2d at 64 (2d Cir. 1980); *Roy*, 734 F.2d at 111. This result is also consistent with the decisions in *Smith* and *Wilson*, which denied Fourth Amendment protections to individuals that were never legal occupants of their residences and therefore never established a legitimate expectation of privacy. *See Smith*, 2015 WL 1507767, at *8; *Wilson*, 2017 WL 3575240, at *4. Finally, plaintiffs' continued residence at their long-term home is simply not analogous to previously established examples of "wrongful

6

presence." *See Roy*, 734 F.2d at 111 n.3 ("Roy's presence at the scene of the search was wrongful since he was supposed to be incarcerated and would have been but for his illegal escape"); *Gallegos v. Haggerty*, 689 F. Supp. 93, 98 (N.D.N.Y. 1988) (finding that plaintiffs involved in a dispute as to their right to occupy two rooms in a house were not "'wrongfully' present in the sense that a burglar is wrongfully in someone else's house or a person is wrongfully in a stolen automobile"). Accordingly, defendants' motion to dismiss is denied as to plaintiffs' first cause of action and denied as to their second cause of action as it pertains to plaintiffs' residence.[1]

*Fourth Amendment Claims as to Plaintiffs' Personal Property*

Plaintiffs also allege an illegal seizure of their personal property in violation of the Fourth Amendment. An unconstitutional seizure of personal property occurs "when there is some meaningful interference with an individual's possessory interests" in the individual's property by a government actor not authorized by a warrant or an exception to the warrant requirement. *See U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984). Interference can occur even when the government does not ultimately come to possess the property. *See U.S. v. Ramirez*, 523 U.S. 65, 71 (1998) (finding that unnecessary destruction of property may constitute a seizure); *see also Spangler v. Wenniger*, 388 Fed. App'x 507, 511 (6th Cir. 2010) (piling dirt on personal property during a search of a garage is a seizure).

---

[1] Given the strength and applicability of cases from other circuits and the absence of Second Circuit authority, the Court does not find it necessary to consider whether plaintiffs had implicit permission from U.S. Bank to continue residing at the house. *See Walls v. Giuliani*, 916 F. Supp. 214, 221 (E.D.N.Y. 1996) (finding that by encouraging squatters to occupy city-owned housing, New York City had created a tenancy relationship with squatters granting them Fourth Amendment rights).

In this case, the Town's conduct may rise to the level of a seizure. Several days after condemning plaintiffs' residence, the town boarded up the building and prevented plaintiffs from accessing their personal property. DE 1 ¶¶ 22-23. This total deprivation of use and access to property is the type of "meaningful interference with possessory interests" the Supreme Court forbade in *Jacobsen*. 466 U.S. at 113. This result holds even though plaintiffs were no longer the legal owners of the house. *See Cochran v. Gilliam*, 656 F.3d 300, 309 (6th Cir. 2011) (finding a Fourth Amendment violation when police assisted a landlord's unauthorized seizure and sale of a tenant's furniture, even though police were assisting the landlord's eviction proceedings against the tenant).

In their memorandum, defendants appear to suggest that no Fourth Amendment violation occurred because the house was not boarded up until four days after the condemnation, providing "ample time [for plaintiffs] to retrieve their personal property." DE 14-6 at 7. But no authority, including the case defendants reference, *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 218 F. Supp. 2d 266 (N.D.N.Y. 2002), supports this position. In *Shaul*, a fired schoolteacher sued for alleged Fourth Amendment violations after the school district cleaned out personal items he left behind in his classroom. *Id.* at 268. The District Court held that the teacher had no possessory interests in the items because he made no effort to retrieve them in the ten days following his termination. *Id.* at 272. The Second Circuit, however, explicitly rejected this conclusion on appeal, noting that the teacher protested being forced to leave without his property and stating, "we cannot agree that, as a matter of law, he lost all possessory interest in any personal effects removed by defendants the following day." *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 185 (2d. Cir. 2004). The facts of this case are even clearer than those in *Shaul*, as plaintiffs remained in the house until physically barred from entry. DE 1 ¶¶ 21-22. Nothing in

plaintiffs' conduct indicates an intent to abandon their property interests or their Fourth Amendment rights therein.

Finally, defendants argue the claim should be dismissed because plaintiffs "fail[ed] to list a single item of personal property" allegedly seized due to the condemnation. While defendants are correct that more than conclusory statements are required to survive a motion to dismiss, the Court must consider allegations in the complaint in their factual context to determine whether they meet the "plausibility" threshold. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here, the context surrounding plaintiffs' allegations makes clear what kinds of items were seized: put simply, all the normal household items a couple would keep in their sole residence of many years. Therefore, plaintiffs' assertion that they "lost all of their personal property and belongings that were inside the house," although general, is sufficiently pleaded to survive a motion to dismiss. DE 1 ¶ 24. Accordingly, defendants' motion is denied as to the second cause of action as it pertains to plaintiffs' personal property.

*Plaintiffs' Monell Claim*

Plaintiffs' final cause of action is for supervisory liability against the Town of Brookhaven for allegedly failing to properly train or supervise its employees. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978). As acknowledged by both parties, a claim for supervisory liability under 42 U.S.C. § 1983 requires an allegation of an underlying constitutional violation. *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999). Since the Court has determined that both of plaintiffs' Fourth Amendment claims are viable, their *Monell* claim proceeds as well.

9

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is **DENIED**.

**SO ORDERED.**

Dated: Central Islip, New York
       October 16, 2023

                                            **/s/ Gary R. Brown**
                                            GARY R. BROWN
                                            United States District Judge